IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES BERNARD MATTHEWS,
      Plaintiff,

vs.                            Case No.: 3:06cv38/MCR/EMT

JAMES CROSBY, et al.,
      Defendants.
_____/

## ORDER

      This cause is before the court upon Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 1). Leave to proceed in forma pauperis has been granted (Doc. 6).

      Upon review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to one or more of the named Defendants. The court will therefore allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

      At all times relevant to his complaint, Plaintiff was an inmate housed at Century Correctional Institution (CCI). Named as Defendant are James V. Crosby, former Secretary of the Florida Department of Corrections (DOC), and the following CCI personnel: Warden J.T. Freeman, Medical Director Albert Yu, Nurses A. Powell and C. Manning, and Sergeant Turner. Plaintiff alleges that upon his entry into (CCI) on August 11, 2005, he was examined by medical staff and his health was determined to be suitable.[1] He was then assigned to the F-Dormitory. Plaintiff alleges that upon entering his cell he discovered it was unsanitary and the mattress was torn and "filthy." He requested cleaning supplies, but his request was denied. On August 18, 2005, Plaintiff noticed an irritating lump on the right side of his neck. He showed the lump to Defendant Turner and declared a medical emergency, but Turner told Plaintiff it was only a "shaving bump" and denied his request

_____

[1]All facts are derived from the Statement of Facts section of Plaintiff's complaint (Doc. 1 at 7-8(3)).

for a medical emergency.  The following day, Plaintiff declared another medical emergency, as the area on his neck had become painful and severely irritated.  He was seen by Nurse Powell, who "wiped-off" his neck area and provided him with ibuprofen.  On August 20, 2005, Plaintiff was seen by another nurse, S. Williams, and diagnosed with Methicillin Resistant Staphylococcus Aureus (MRSA), a staff infection.  Plaintiff alleges he contracted MRSA as a result of being placed in unsanitized living quarters.  For the next three days Plaintiff remained housed in F-Dorm, despite his request that he be admitted to the infirmary.  On August 23, 2005, Plaintiff was seen by Dr. Albert Yu, who prescribed medication and issued a directive that Plaintiff not work in food service. Plaintiff alleges that Dr. Yu did nothing else to prevent the spread of disease, nor provide the same medical treatment to Plaintiff that other infected inmates were receiving. Plaintiff further alleges after his diagnosis he was not permitted to reside in the infirmary and was moved from dorm to dorm.

Plaintiff claims that MRSA spread throughout CCI, but the infirmary was over its capacity with infected inmates.  Thus, with Warden Freeman's authorization, F-Dorm was converted into a type of quarantine area, where non-infected inmates were housed on the top floor, and infected inmates were housed on the bottom floor.  However, despite being segregated, infected and non-infected inmates used the same showers and phones, dined together, and shared the T.V. room. Plaintiff filed grievances and an appeal, all of which were denied.

Plaintiff alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments as "guaranteed by Florida and Federal Const. Law to be allowed general safety and well being/and to be free from unjust/cruel and unusual punishment/treatment" (Doc. 1 at 7(4)).  He also generally alleges due process and equal protection violations, as well as an Eighth Amendment claim based upon inadequate medical care (*id.* at 7(4)-8(1)).  As relief, Plaintiff seeks a declaratory judgment and compensatory and punitive damages (*id.* at 8(2)-8(3)).

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners.  Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991).  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or

malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Similarly, a difference in medical opinion between the medical staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment. *Id.* (citations omitted).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104, 97 S.Ct. 285. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105-06, 97 S.Ct. 285 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105, 97 S.Ct. 285. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an

"objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference.  Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).  However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.  Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)).  To do otherwise would be "to constitutionalize claims that sound in tort law."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

In the instant case, Plaintiff has failed to allege sufficient facts showing that his medical treatment was constitutionally deficient.  Plaintiff was medically examined on August 11, 2005 and no health problems were noted.  One week later he noticed a bump on his neck and advised Defendant Turner that he was declaring a medical emergency.  Turner did not believe that the bump was anything other than a shaving bump and denied Plaintiff's request.  However, the very next day Plaintiff declared a medical emergency and was seen by Nurse Powell.  Defendant Turner's response was not unreasonable under the facts alleged by Plaintiff and Plaintiff has not established that a one-day delay in treatment equates to "deliberate indifference" to his "serious" medical needs.  Nurse Powell did not diagnose Plaintiff with MRSA, but cleaned the infected area and provided Plaintiff with ibuprofen.  Nurse Williams correctly diagnosed Plaintiff the following day, and he was seen by Dr. Yu two days later, on August 23, 2005.  Thus, from the time Plaintiff first noticed a "bump" on August 18th, and time he saw a physician and was prescribed medication on August 23rd, only five days had elapsed, and in the interim Plaintiff was seen by two nurses and provided with ibuprofen for pain.  Plaintiff has failed to establish that any Defendant ignored a serious medical need, deprived Plaintiff of treatment in order to punish him, or was otherwise "deliberately indifferent" to his medical needs.  To the extent Plaintiff disputes the adequacy of the treatment he received, his claim must fail, as a difference in opinion regarding the proper course of medical treatment cannot support an Eighth Amendment claim.

Moreover, Plaintiff should delete Defendant Manning as a Defendant from his amended complaint.  In support of his claim against her, Plaintiff states as follows:

> On September 1, 2005 Nurse C. Manning came over to F-dorm along with an Officer of Security wearing gloves and calling those of us on the bottom floor out of our cells to check our conditions and it was at this time that I/Plaintiff ask [sic] Nurse Manning why am I being treated in this matter by the medical department, and her/Nurse Manning [sic] response was that the warden gave the medical department authorization to place Plaintiff along with the other inflicted inmates in F-dorm as a step down of medical because there was no room in the infirmary because it was fill [sic] to capacity with other inmates.

(Doc. 1 at 7(3)).

The fact that Nurse Manning continued to house Plaintiff, who admittedly was infected with MRSA, with other infected inmates and apart from non-infected inmates, does not show disregard of, or deliberate indifference to, Plaintiff's medical needs. Thus, Plaintiff has failed to state an Eighth Amendment claim against Nurse Manning.

Plaintiff has also failed to state a constitutional claim regarding the conditions of his cell. At a minimum, all claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); see also Hamm, 774 F.2d at 1571-72 (11th Cir. 1985). Furthermore, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id.

As noted by the Eleventh Circuit in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004), the Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions:

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). The challenged condition must be "extreme." Id. at 9, 112 S.Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, id. at 35, 113 S.Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical

inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S.Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347, 101 S.Ct. at 2399.

Chandler, 379 F.3d at 1289-90. The objective prong is concerned with both the "severity" and the "duration" of the prisoner's exposure to the alleged unconstitutional condition. *Id.* at 1295. "[M]ere discomfort, without more, does not offend the Eighth Amendment." *Id.*

The second part of the two-part analysis is the "subjective component":

[T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S.Ct. at 999 (marks and citation omitted). The proper standard is that of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, 111 S.Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). In defining the deliberate indifference standard, the Farmer Court stated: [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837, 114 S.Ct. at 1979. Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S.Ct. at 1982-83.

Chandler, 379 F.3d at 1289-90.

In the instant case, Plaintiff failed to allege sufficient facts showing that the cell conditions of which he complains were so "extreme" as to pose an unreasonable risk of serious damage to his future health. An "unsanitized" cell and a "filthy" and torn mattress are certainly unpleasant conditions, but they are not so grave as to violate contemporary standards of decency. *See* Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988) (five days without toilet paper and ten days without toothbrush or toothpaste in a "filthy, roach-infested cell" did not constitute cruel and unusual

punishment); Adams v. Pate, 445 F.2d 105, 108-09 (7th Cir. 1971) (no constitutional violation where inmate's cell was filthy and stunk, water faucet was inches above the toilet, and ventilation was inadequate).  Moreover, although Plaintiff alleges that he contracted the staff infection because of the conditions in his cell, Plaintiff has offered no facts establishing a causal connection between the two.   Indeed, Plaintiff has alleged that infected inmates mingled with non-infected inmates throughout the prison; thus, it is more likely that Plaintiff contracted the infection from some source other than his unsanitary cell or mattress (see Methicillin-Resistant Staphylococcus aureus Skin or Soft Tissue Infections in a State Prison - Mississippi, 2000 (case investigation revealed that MRSA infections were transmitted person-to-person within the prison), available at http://www.cdc.gov/ mmwr/preview/mmwrhtml/mm5042a2.htm (last visited May 26, 2006)).  Furthermore, Plaintiff has alleged no facts suggesting that Defendant Turner was aware of the MRSA outbreak when he denied Plaintiff's request for cleaning supplies,[2] or when he failed to grant Plaintiff's first request for a medical emergency.   Thus, Plaintiff has failed to allege facts showing that Defendants were deliberately indifferent to an excessive risk of harm.

Regarding the housing conditions after Plaintiff was diagnosed with MRSA, Plaintiff is advised that if a prisoner is being exposed to "an unreasonable risk of serious damage to his future health," this may satisfy the Eighth Amendment's objective component.  Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).  However, Plaintiff has failed to establish how being housed with other infected inmates, or mingling with non-infected inmates, posed a risk to his future health, as he was already infected, and he has alleged no facts suggesting his condition worsened after he was placed in the segregated dormitory instead of the infirmary.

Additionally, Plaintiff has failed to state a basis for liability against former Secretary Crosby to the extent he seeks to hold him liable because he is the supervisor of the other Defendants. Plaintiff is advised that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations

---

[2]Although Plaintiff has not specifically identified Turner as the one who denied his request for cleaning supplies, it appears from the context of Plaintiff's complaint that it was Turner.

omitted).   Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne v. Jarvis, 197 F.3d 1098, 1106 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000); Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur.  *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege Defendant Crosby personally participated in the alleged constitutional violations or that he directed a subordinate to act unlawfully.  It appears Plaintiff named Crosby as a Defendant only because he denied Plaintiff's appeal.  This is insufficient to state a constitutional claim.  Unless sufficient facts exist and are alleged to support a basis for liability as to Defendant Crosby, Plaintiff should drop him from this lawsuit.

Plaintiff has also failed to state an equal protection claim.  The Equal Protection Clause requires that the government treat similarly situated people in a similar manner.  *See* <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).  In order "[t]o establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other persons who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest," such as race, gender, or religion.  <u>Jones v. Ray</u>, 279 F.3d 944, 946-47 (11th Cir. 2001).  Thus, in order to assert a viable equal protection claim, Plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him.  *See* <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992); <u>Hendking v. Smith</u>, 781 F.2d 850 (11th Cir. 1986).  Plaintiff must also allege Defendants acted with the intent to discriminate against him.  *See* <u>McClesky v. Kemp</u>, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987); <u>E & T Realty v. Strickland</u>, 830 F.2d 1107, 1113 (11th Cir. 1987).  Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient.  <u>GJR Investments, Inc. v. County of Escambia</u>, 132 F.3d 1359, 1367-68 (11th Cir. 1998); <u>Coon v. Georgia Pacific Corp.</u>, 829 F.2d 1563, 1569 (11th Cir. 1987).

In the instant case, Plaintiff has not identified the basis of the alleged discrimination (such as race, gender, or religion).  Moreover, Plaintiff does not allege, nor do the facts suggest, that he was treated differently from other persons who were similarly situated to him, or that Defendants intended to discriminate against him.  Thus, his equal protection claim is subject to dismissal.

To the extent Plaintiff contends Defendants' conduct violates the Due Process Clause of the Fifth and/or Fourteenth Amendments, in addition to the Eighth Amendment, he cannot state a due process violation.  If a constitutional claim is covered by a specific constitutional provision, such as the Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.  *See* <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 843, 118 S.Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998) (citations omitted).  Thus, substantive due process analysis is inappropriate if Plaintiff's claims are covered by another constitutional amendment.  *Id.*  In the instant case, Plaintiff's claims are covered by the Eighth

Amendment and the Equal Protection Clause; therefore, his Fifth and Fourteenth Amendment due process claims are subject to dismissal.

Finally, Plaintiff has alleged no facts to support a First Amendment claim, therefore, he should delete that claim from his amended complaint.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action.  If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal.  If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint**."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint.  Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims.  Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  Local Rule 15.1, Northern District of Florida.

Accordingly, it is **ORDERED**:

1.      The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C.  § 1983.  This case number should be written on the form.

2.      Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written and submitted on the

court form.  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

     3.     Failure to comply with this order may result in dismissal of this action.


**DONE AND ORDERED** this $\underline{31^{st}}$ day of May 2006.



          <u>/s/ *Elizabeth M. Timothy*</u>
          **ELIZABETH M. TIMOTHY**
          **UNITED STATES MAGISTRATE JUDGE**